UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAHSA BABAEI et al.,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF STATE et al.,<br><br>    *Defendants*. | Civil Action No. 23-1244 (TJK) |

### MEMORANDUM OPINION

Plaintiffs are five Iranian citizens residing in that country whose nonimmigrant visa applications have been pending for about a year and a half. They sue the U.S. Departments of State and Homeland Security, as well as officials in those departments in their official capacities, under the Administrative Procedure Act for unreasonable delay in making final decisions on their applications. Defendants move to dismiss the complaint for lack of jurisdiction and for failure to state a claim. For the reasons explained below, the Court holds that it has jurisdiction over the claims in this suit—although not those against all defendants—but that Plaintiffs have failed to state claims for unreasonable delay. Thus, the Court will grant Defendants' motion and dismiss the case.

**I.  Background**

    **A.  Legal Background**

The Immigration and Nationality Act ("INA") provides for certain nonimmigrant visas for those intending to enter the United States temporarily. Among these are the F-1 "student visa," 8 U.S.C. § 1101(a)(15)(F)(i), and J-1 "exchange visitor" visa for those seeking to teach or study as part of an approved program in the United States. *Id.* § 1101(a)(15)(J). Both types of visas are

issued by Department of State consular posts worldwide and require applicants to apply and submit to an interview to assess their eligibility. *Id.* § 1201(a)(1)(B); 22 C.F.R. §§ 41.102(a), 103(a)(1).

Department of State regulations dictate that "[w]hen a visa application has been properly completed and executed . . . the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a). No visa "shall be issued" if (1) "it appears to the consular officer . . . that such alien is ineligible to receive a visa," (2) "the application fails to comply with the [INA], or the regulations issued thereunder," or (3) "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa." INA § 221(g) (codified at 8 U.S.C. § 1201(g)).

The Enhanced Border Security and Visa Entry Reform Act of 2002, in relevant part, prohibits the issuance of nonimmigrant visas to nationals of countries designated as a state sponsors of international terrorism "unless the Secretary of State determines, in consultation with the Attorney General and the heads of other appropriate United States agencies, that such alien does not pose a threat to the safety or national security of the United States." 8 U.S.C. § 1735(a). Iran is designated a state sponsor of international terrorism and thus is subject to section 1735. *State Sponsors of Terrorism*, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism [https://perma.cc/46V2-FZD9].

### B.      Factual Background

Plaintiffs are five Iranian citizens residing in that country who applied at the U.S. Embassy in Yereven, Armenia, for nonimmigrant J-1 or F-1 visas to study or conduct research at American universities. ECF No. 1 ("Compl.") ¶ 31.[1] They each attended interviews at the Yereven Embassy

---

[1] Plaintiffs represent in their opposition that one of them, Amir Nosrati, intends to voluntarily dismiss his claim. ECF No. 13 at 1 n.1. But he has not done so.

between July 8, 2022 and October 11, 2022. *Id.* ¶¶ 36, 51, 67, 84, 99. At that point, each was informed that his or her application was "refused under section 221(g)" because it "requires administrative processing." *Id.* ¶¶ 37, 53, 68, 85, 100. Soon after, each received an email from the Embassy with more questions about his or her travel history, relatives, contact information, employment, and so on. *Id.* ¶¶ 38, 54, 69, 86, 101. Each responded within a few days. *Id.* ¶¶ 39, 55, 70, 87, 102. Since then, despite their repeated requests for updates on the status of their visa applications, none has been provided such an update. *Id.* ¶¶ 40–43, 56–59, 71–75, 88–91, 103–06. In the complaint, each explains the difficulty this delay has posed and expresses concern that further delay will impact his or her ability to study or conduct research in the United States. *Id.* ¶¶ 42, 44, 60, 77, 92, 108.

    **C.**    **Procedural History**

In May 2023, Plaintiffs sued the U.S. Departments of State and Homeland Security and related officials in those departments in their official capacities. They assert that Defendants' "unreasonable delay" in deciding their visa applications violates the Administrative Procedure Act ("APA"). Compl. at 20–29; *see* 5 U.S.C. §§ 555(b), 706.[2] They ask that Defendants "perform their duty to render a decision on Plaintiffs' J-1 and F-1 visa applications without further delay," and that they be awarded attorney's fees and costs. Compl. at 29.

A few months later, Defendants moved to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). ECF No. 12. Plaintiffs oppose and move for limited discovery to support their claims. ECF No. 14 at 34–36.

---

[2] Plaintiffs sue U.S. Department of State; Anthony Blinken, in his official capacity as Secretary of State; U.S. Department of Homeland Security; Alejandro Mayorkas, in his official capacity as Secretary of U.S. Department of Homeland Security; Stephanie Zakhem, in her official capacity as Consul of the United States Embassy in Armenia; and Consular Officers of the U.S. Embassy-Yerevan.

## II.     Legal Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, when faced with a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)). In reviewing such a motion, the Court is not limited to the allegations in the complaint and may consider materials outside the pleadings but must "accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)).

A party may also move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) because it "fail[s] to state a claim upon which relief can be granted." "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Unlike consideration of a motion under 12(b)(1), "[i]n determining whether a complaint states a claim, the court may [only] consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). Though "a court must accept as true all of the allegations contained in a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

4

### III.  Analysis

The Court has subject matter jurisdiction over Plaintiffs' claims of unreasonable delay in processing their visa applications, although not over those against the Department of Homeland Security and its Secretary.  As for those defendants that remain, however, Plaintiffs have failed to state a claim for unreasonable delay.  Thus, the Court will grant Defendants' motion and dismiss the case.

#### A.   Subject-Matter Jurisdiction

##### 1.   Standing

Under Article III of the Constitution, federal courts "may only adjudicate actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), of which "the core component of standing is an essential and unchanging part," *Lujan*, 504 U.S. at 560.  To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Defendants argue that Plaintiffs lack standing for two reasons.  First, they argue, noncitizens have no right to a visa or to travel to the United States such that they have pleaded a cognizable injury.  ECF No. 12 at 18–24.  And second, any injury is not redressable because section 1735(a) dictates that their applications would be refused anyway.  *Id.* As many judges in this District have already found, they are wrong on both counts.

First, Plaintiffs have sufficiently alleged an injury in fact.  As other judges in this District have consistently held, visa applicants "enjoy a 'procedural right to reasonably expeditious agency action that is tethered to [their] concrete professional and financial interest in earning an advanced degree'" or "completing a postdoc research program." *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023) (quoting *Rahman v. Blinken*, No. 22-cv-2732 (JEB), 2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023)) (holding that Iranian nationals who applied

5

for non-immigrant visas to study or teach in the United States and alleged unreasonable delay in processing those applications had alleged an injury in fact).[3] So too here. Plaintiffs do not claim a right to a visa or to travel to the United States. Instead, they allege that the processing of their applications has been unreasonably delayed and that this delay has injured their professional and financial interests. Compl. ¶¶ 3, 37–39, 44, 53–55, 60, 68–70, 77, 85–87, 92, 100–02, 108. And "[a]lthough the State Department may choose[] to characterize a section 221(g) notification as a 'refusal,' that magic word is not a get-out-of-review-free card." *Al-Gharaway v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 16 (D.D.C. 2022) (internal quotation marks and citation omitted). "At the motion to dismiss stage, the Court must examine Plaintiffs' allegations to determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an 'interim'" or final decision. *Id*. Plaintiffs have pleaded such an injury in the form of a failure to receive final decisions on their applications within a reasonable period. *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, 168 F. Supp. 3d 268, 282 (D.D.C. 2016).

Second, Plaintiffs' injuries are redressable. Again, the Court looks to the weight of authority resolving this question. When plaintiffs' "applications are still pending administrative processing, . . . the Department's review of their applications is not complete," and the plaintiffs' injuries "may be redressed with an order to complete that review more expeditiously." *Khazaei*, 2023 WL 6065095, at *4 (rejecting the same redressability argument presented here, which "assume[d] that redress could come only in the form of 're-adjudicat[ing]' applications that have

---

[3] *See also Ahmadi v. Scharpf*, No. 23-cv-953 (DLF), 2024 WL 551542, at *3 (D.D.C. Feb. 14, 2024); *Pourabdollah v. Blinken*, No. 23-cv-1603 (DLF), 2024 WL 474523, at *3–4 (D.D.C. Feb. 7, 2024); *Khan v. Blome*, No. 22-cv-2422 (JEB), 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022); *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 9 (D.D.C. 2022).

already been adjudicated pursuant to Section 1735(a)"); *see also Ahmadi v. Scharpf*, No. 23-cv-953 (DLF), 2024 WL 551542, at *3 (D.D.C. Feb. 14, 2024) (same); *Pourabdollah v. Blinken*, No. 23-cv-1603 (DLF), 2024 WL 474523, at *4 (D.D.C. Feb. 7, 2024) (same). Plaintiffs allege that their applications remain pending further administrative processing. Compl. ¶¶ 3, 37–39, 53–55, 68–70, 85–87, 100–02. This is not a situation, as Defendants assert, where Plaintiffs ask the Court to invalidate the Department of State's denial of a visa and compel a different outcome.[4] Thus, their injuries—unreasonable delay—would be redressed by a decision, one way or the other. *See Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Pompeo*, No. 18-cv-1388 (TSC), 2019 WL 367841, at *8 (D.D.C. Jan. 30, 2019) ("Plaintiffs seek final adjudication of their applications; not a specific outcome. If Plaintiffs are granted a visa, their injury will be redressed. If Plaintiffs are finally denied at any of the intermediary steps, although it is not their desired outcome, their injury—the lack of adjudication—also will be redressed.").

Defendants also argue that Plaintiffs lack standing to bring their claims against some of them specifically. On this point, they find some firmer ground. To establish standing as to each defendant, Plaintiffs must show that their injuries are "causal[ly] connect[ed]" to each defendant's conduct and "likely" can be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. Defendants challenge Plaintiffs' standing to sue four defendants: the Departments of State and Homeland Security, and the Secretary in charge of each. ECF No. 12 at 33–35.

The Department of State and its Secretary are properly named as defendants. Plaintiffs allege that the Department of State "is responsible for the adjudication of visa applications at posts

---

[4] *See Polyzopoulos v. Garland*, No. 20-cv-804 (CKK), 2021 WL 1405883, at *8 (D.D.C. Apr. 14, 2021) (holding that denial of a visa was not redressable "even assuming the Court had such authority" to "compel the State Department to reconsider its decision").

worldwide, including Plaintiffs' nonimmigrant visa applications pending before the U.S. Embassy in Yerevan, Armenia." Compl. ¶ 15. And as for Secretary Antony Blinken, they allege that he "is responsible for the operation of [the Department of State], including its various Embassies and Consulates located throughout the world," and that he "has ultimate responsibility over ensuring the adjudication of Plaintiffs' nonimmigrant visa applications." *Id.* ¶ 16. No more is required. *See Fakhimi v. U.S. Dep't of State*, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023); *Al-Gharaway*, 617 F. Supp. 3d at 9–11.

The Court is persuaded, however, that Plaintiffs lack standing to bring their claims against the Department of Homeland Security and its Secretary. Plaintiffs allege only that these defendants are responsible for "security and background checks of visa applicants worldwide," including those "conducted on Plaintiffs." Compl. ¶¶ 17–18. "Absent, however, are facts suggesting that the delays at issue *here* are caused by such security screening or that there is any action [the Department of Homeland Security] could take to hasten review of their applications." *Rashidi v. U.S. Dep't of State*, No. 23-cv-1569 (JEB), 2023 WL 6460030, at *4 (D.D.C. Oct. 4, 2023) (dismissing unreasonable delay claims as to the Department of Homeland Security and Secretary Alejandro Mayorkas by Iranian nationals whose visa applications were refused under section 221(g)). That it may be "'plausible' that obtaining a security clearance from [the Department of Homeland Security] is the reason for the delay in adjudicating Plaintiffs' visa applications" is not enough. ECF No. 14 at 16–17; *see Khoshrou v. Blinken*, No. 22-cv-2859 (CKK), 2023 WL 4930086, at *3 (D.D.C. Aug. 2, 2023) (dismissing claims against the Department of Homeland Security because "the 'sheer possibility' that a defendant played a role in the delayed processing of a visa is not adequate to establish standing") (citation omitted); *Al-Gharaway*, 617 F. Supp. 3d at 9–10

(similar). For this reason, Court will dismiss the Department of Homeland Security and its Secretary as defendants.

### 2. Justiciability

#### a. The Consular Non-Reviewability Doctrine

Defendants argue that Plaintiffs' claims are non-justiciable under the consular non-reviewability doctrine, which "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). The doctrine recognizes that because "[d]ecisions regarding the admission and exclusion of noncitizens may implicate relations with foreign powers, or involve classifications . . . defined in the light of changing political and economic circumstances and, accordingly, such judgments are frequently of a character more appropriate to either the Legislature or the Executive." *Id.* (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)) (internal quotation marks omitted). The consular non-reviewability doctrine "does not, however, apply where 'the government has not made a final visa decision.'" *Khazaei*, 2023 WL 6065095, at *4 (quoting *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 11 (D.D.C. 2017)).[5] And to repeat, Plaintiffs' visa applications remain pending further administrative processing. Because the government has not made a final decision, the non-reviewability doctrine does not apply.

Defendants counter that by including decisions to "withhold" visas under the umbrella of the consular non-reviewability doctrine, the D.C. Circuit in *Baan Rao* adopted the Second Circuit's view that "the doctrine of consular nonreviewability applies not only when 'a plaintiff challenges an official's discretionary decision to approve or deny a visa application,' but also 'where a

---

[5] *See also Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020); *Kinsley v. Blinken*, No. 21-cv-962 (JEB), 2021 WL 4551907, at *4–5 (D.D.C. Oct. 5, 2021); *Zandieh v. Pompeo*, No. 20-cv-919 (JEB), 2020 WL 4346915, at *3 (D.D.C. July 29, 2020).

9

plaintiff seeks to compel an official to simply adjudicate a visa application.'" *Abdo v. Tillerson*, No. 17-cv-7519 (PGG), 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019); *see* ECF No. 12 at 36. The Court is unpersuaded. *Baan Rao* involved a challenge to final visa decisions, which the Circuit held were unreviewable. 985 F.3d at 1023, 1025. Here, in contrast, Plaintiffs' applications remain pending. As other judges in this District have reasoned following *Baan Rao*, "[i]f Plaintiffs' applications are still under consideration, such that their visas may yet issue, then the [State] Department's obligations under 5 U.S.C. §§ 555(b) and 706(1) continue to apply with equal force." *Khazaei*, 2023 WL 6065095, at *5. Thus, visas temporarily "refused" under INA section 221(g) for further administrative proceeding have not been "withheld" within the meaning of *Baan Rao*. *Id.*; *see also Pourabdollah*, 2024 WL 474523, at *4–5 (same) (citing cases). That makes sense. After all, there can be no "second-guess[ing] the Executive's decisions" when none have been made. ECF No. 12 at 32 (quoting *Yafai v. Pompeo*, 912 F.3d 1018, 1020 (7th Cir. 2019)).

### b.   Other Justiciability Issues

Defendants also say that Plaintiffs, as non-resident aliens, cannot challenge a condition of entry—in this case, a section 1735 determination—or a decision to exclude them. ECF No. 12 at 30–33. They argue that "'[t]he conditions of entry for every [noncitizen], the particular classes of [noncitizens] that shall be denied entry altogether, the basis for determining such classification, the right to terminate hospitality to aliens, [and] the grounds on which such determination shall be based' are 'wholly outside the power' of courts to control." *Id.* at 31 (quoting *Fiallo v. Bell*, 430 U.S. 787, 796 (1977)); *see also Baan Rao*, 985 F.3d at 1024 ("[C]laims otherwise barred by the consular nonreviewability doctrine are subject to judicial review in two narrow circumstances," including when "an American citizen can challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights."). And because the Department of State "has determined to not issue Plaintiffs an entry document, . . . the Court may not review this decision unless expressly

10

authorized by law." ECF No. 16 at 10 (internal quotation marks and citation omitted).

Defendants' argument fails for the same reason as others above: it is "premised on the incorrect characterization that there has been a determination about [Plaintiffs] under Section 1735 and/or that [they] [have] been refused a visa." *See Fakhimi*, 2023 WL 6976073, at *5. Because Plaintiffs' applications remain pending, they do not seek review of a final visa refusal.

Defendants respond that, even so, by seeking a final adjudication Plaintiffs necessarily seek to compel a section 1735(a) determination, which, they say, is non-justiciable. ECF No. 12 at 32–33. Once again, they are wrong. As other judges have persuasively reasoned, "[t]o the extent that the reason for the delay is to allow the Secretary to determine whether [Plaintiffs] 'do[] not pose a threat to the safety or national security of the United States,' as required under Section 1735 before a visa can issue, Plaintiffs' unreasonable-delay claims are still justiciable." *Fakhimi*, 2023 WL 6976073, at *5 (quoting *Khazaei*, 2023 WL 6065095, at *5). The Court adopts their reasoning.

### B. The Adequacy of Plaintiffs' Complaint

Unfortunately for Plaintiffs, although the Court has subject matter jurisdiction over their claims against the remaining defendants, they have failed to state a claim against those defendants. Their claims for unreasonable delay under the APA are governed by 5 U.S.C. § 706(1), under which a "reviewing court [must] . . . compel agency action unlawfully withheld or unreasonably delayed." The "central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 79 (D.C. Cir. 1984)).[6]

---

[6] Plaintiffs say they have not "brought any mandamus claims, but solely claims under the APA." ECF No. 14 at 9 n.4. But "[c]ourts review claims of unreasonable delay in processing

11

Thus, the Court proceeds to the "central question" of whether Plaintiffs' allegations in the complaint state a claim for unreasonable agency delay that is "so egregious as to warrant mandamus." *TRAC*, 750 F.2d at 79.[7] The Court considers the six *TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

---

immigration petitions according to 'the same [standard] under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361.'" *Ahmadi*, 2024 WL 551542, at *4 (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017)).

[7] Defendants also argue that Plaintiffs' claims fail because a consular officer need not take any discrete action to adjudicate their visas. And indeed, a "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *see also In re Core Commc'ns, Inc.*, 531 F.3d at 855 (explaining that an unreasonable delay claim requires, among other things, "a clear duty to act" (quoting *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000))). Still, the APA "imposes a duty on Defendants to act within a 'reasonable' time on Plaintiffs' applications." *See Nine Iraqi Allies*, 168 F. Supp. 3d at 293; *see also Khazaei*, 2023 WL 6065095, at *6 ("Granting or refusing a visa to an applicant who has been interviewed is clearly a discrete agency action. That action, moreover, is required by both the APA and the Department's own regulation."). And to be sure, "[t]he limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law)." *Norton*, 542 U.S. at 65. But "when an agency is compelled by law to act within a certain time period"—even if "the manner of its action is left to the agency's discretion"—"a court can compel the agency to act," though it "has no power to specify what the action must be." *Id.* Thus, just as other judges in this District have consistently found, Defendants are subject to a discrete, required duty to reach a final decision on Plaintiffs' visa applications within a reasonable time. *See, e.g.*, *Khazaei*, 2023 WL 6065095, at *6. Thus, their complaint is not deficient for this reason.

*TRAC*, 750 F.2d at 80 (internal quotation marks and citations omitted). These six factors are often grouped into four questions: "First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?" *Khazaei*, 2023 WL 6065095, at *6 (quoting *Rahman*, 2023 WL 196428, at *4).[8]

The first two *TRAC* factors—often considered "the most important"—favor Defendants. *See In re Core Commc'ns, Inc.*, 531 F.3d at 855. With no "congressionally supplied yardstick" imposing a statutory deadline for J-1 or F-1 visas, the Court "turn[s] to case law as a guide." *Ahmadi*, 2024 WL 551542, at *5 (quoting *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).[9] "District courts have generally found that immigration

---

[8] Plaintiffs argue that it is "premature to dispose of the merits without further discovery" and move the Court to order limited discovery into the visa application review process at the Yerevan Embassy. ECF No. 14 at 23, 34–36. But the "majority view expressed by Judges on this Court . . . is that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay." *Devani v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-1932 (DLF), 2023 WL 2913645, at *3 (D.D.C. Apr. 12, 2023) (quoting *Bega v. Jaddou*, No. 22-cv-2171 (BAH), 2022 WL 17403123, at *4 n.2 (D.D.C. Dec. 2, 2022)). Here, the "record contains enough facts to evaluate the *TRAC* factors at [this] point," so the Court "do[es] just that." *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 12 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023) (citation omitted). In addition, the Court will deny Plaintiffs' motion for discovery. As Chief Judge Boasberg noted when considering a similar motion, "Plaintiffs' requested discovery is rather broad and arrives in a type of suit in which discovery typically does not occur. Given the surfeit of lawsuits challenging delays in processing visa applications that is currently swamping our courts, discovery in every such case would lead to a substantial imposition on the Government." *Rashidi*, 2023 WL 6460030, at *7. As in that case, the Court "decline[s] to order discovery without a sturdier basis for doing so." *See id.*

[9] The Court echoes other judges "unpersuaded" by Plaintiffs' argument "that State's asserted policy of prioritizing student and exchange-visitor visas—or that the 60- to 90-day timeframe that various embassies have represented is the typical administrative-processing time—

13

delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Id.* (quoting *Rahman*, 2023 WL 196428, at *4). When the complaint was filed, Plaintiffs had been waiting between seven and ten months, which is now closer to a year and a half. Under the circumstances, that delay is not unreasonable, particularly as compared to the length of delays in other J-1 and F-1 visa cases.[10] And that reasonableness is "informed by the applicability of 8 U.S.C. § 1735(a), which requires the Secretary of State to make a finding that [Plaintiffs]—all Iranian nationals—'do[] not pose a threat to . . . safety or national security' before issuing visas." *See Ahmadi*, 2024 WL 551542, at *5.[11]

The Court turns next to *TRAC* factor four, which along with the first two is given "the greatest weight." *See Ahmadi*, 2024 WL 551542, at *6 (quoting *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 15 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023)). This factor also favors Defendants. As judges considering the same issue have explained, "Plaintiffs' applications are delayed because of resource-allocation decisions that do not lend themselves to judicial reorderings of agency priorities." *Khazaei*, 2023 WL 6065095, at *7 (internal quotation marks and

---

operates as a rule of reason that State has violated in this case." *Rashidi*, 2023 WL 6460030, at *4; *see* ECF No. 14 at 29. Plaintiffs "put forth no compelling reason why the 'public facing announcements' of an agency should be understood to supply the granular substance of a rule of reason." *Milligan v. Blinken*, No. 20-cv-2631 (JEB), 2021 WL 3931880, at *8 (D.D.C. Sept. 2, 2021); *see also Rashidi*, 2023 WL 6460030, at *4.

[10] *See, e.g.*, *Ahmadi*, 2024 WL 551542, at *5 (21-month delay in the adjudication of J-1 visa was not unreasonable); *Shen v. Pompeo*, No. 20-cv-1263 (ABJ), 2021 WL 1246025, at *8 (D.D.C. Mar. 24, 2021) (21-month delay in the adjudication of F-1 visa was not unreasonable); *Khazaei*, 2023 WL 6065095, at *6–7 (16-month delay in the adjudication of F-1 and J-1 visas was not unreasonable); *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 162 (D.D.C. 2022) (17-month delay in adjudication of J-1 visa was not unreasonable). The Court measures these delays as of the time of the court's ruling.

[11] In addition, the "sheer brevity of the delays at issue" underscore why discovery is unnecessary to evaluate these factors. *See Rashidi*, 2023 WL 6460030, at *6.

citation omitted). Plaintiffs posit that, perhaps, their applications are "at the top of the pile," so no reordering would be necessary. ECF No. 14 at 31. If that were the case, there would be "no need to compel" an adjudication, and "[o]therwise, expediting review would merely redirect resources from other cases." *Fakhimi*, 2023 WL 6976073, at *10. Nor have Plaintiffs alleged any basis to believe that they were "singled out for slower adjudication." *Rashidi*, 2023 WL 6460030, at *5 (citing *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 343 (D.C. Cir. 2023)). Though they cite data from the Yereven Embassy suggesting that the vast majority of recently finalized applications predate theirs, ECF No. 18 at 5, "the fact that others were interviewed after and processed before [Plaintiffs] does not necessarily lead to the conclusions that Plaintiffs draw, as different visa applications vary in complexity," and their applications may well have been delayed by the need to make such individualized section 1735 determinations. *See Fakhimi*, 2023 WL 6976073, at *10. And "one need not unearth the details of the visa-adjudication process at Yerevan and elsewhere to surmise that the relief Plaintiffs seek would reorder State's priorities." *Rashidi*, 2023 WL 6460030, at *6.

The remaining *TRAC* factors are more of a wash. Factors three and five slightly favor Plaintiffs, given their allegations that they have had to defer their academic and career plans, and medical research they plan to pursue. *See* Compl. ¶¶ 34, 44. Factor six favors neither party. Plaintiffs do not allege bad faith—at most, they suggest that delay exceeding a 60- to 90-day processing time presents "the appearance of impropriety," based on guidance from certain consular posts that Iranian F-1 visa applications should be resolved within 90 days of the visa interview. ECF No. 14 at 33; *see* Compl. ¶ 109. But they do not allege that the embassy at issue follows any such guidance, and, in fact, the consular posts issuing those estimates acknowledge processing time "can take significantly longer" in some cases. ECF No. 1-1 at 27. So, because "Plaintiffs do not argue—

15

let alone allege facts suggesting—that [the delay] is the result of wrongdoing and not legitimate processing issues associated with [their] individual applications, this factor does not move the needle." *See Rashidi*, 2023 WL 6460030, at *5.

For these reasons, Plaintiffs have not stated a claim that the delay in processing their visa applications is unreasonable. Thus, their claims against the remaining defendants, and the case, will be dismissed as well.

### IV.  Conclusion

For all the above reasons, the Court will grant Defendants' motion to dismiss. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 19, 2024